SIXTH DIVISION

June 11, 2004

No. 1-03-0656

MILDRED PROSTRAN,

Plaintiff-Appellant,

v.

THE CITY OF CHICAGO, a Municipal Corporation,

Defendant-Appellee.

)))))))))

)

Appeal from the

Circuit Court of

Cook County

Honorable

David G. Lichtenstein,

Judge Presiding.

PRESIDING JUSTICE O’MARA FROSSARD delivered the opinion of the court:

In this personal injury case, plaintiff Mildred Prostran sued the City of Chicago (the City), alleging that she fell on a dug-up section of sidewalk and broke two bones in her left wrist.  The City moved for summary judgment, arguing that it owed plaintiff no duty as the defect in the sidewalk was open and obvious and that it was immune from liability for failure to provide warning devices.  The trial court granted the City’s motion.  On appeal, plaintiff contends that, due to her visual handicap, the defect of the sidewalk was not open and obvious and that the City should have anticipated that visually disabled people might not notice the condition, appreciate the risk, and avoid the area. 

BACKGROUND

Plaintiff filed a complaint against the City, contending that she was injured due to the City’s negligence.  She asserted that the City owed her a duty to maintain its sidewalks and that the City had breached its duty by allowing rocks, dirt, and debris to accumulate on the sidewalk while it was under construction; by failing to barricade and protect the sidewalk while it was under construction; by failing to post any warning signs or cautionary devices in the area; and by failing to provide alternative means around the construction.  Plaintiff sought $50,000 in damages.

At her deposition, plaintiff testified that about 8:50 a.m. on September 1, 1999, she was walking south on the sidewalk on the east side of North Oakley on her way to the bus stop at Addison and North Oakley.  Her normal walking route to the bus stop was on North Oakley and she would “go that way practically every day.”  Part of her route crossed an alley at about 3615 North Oakley.  Plaintiff testified that on the morning in question, when she was about four or five sidewalk squares from where the sidewalk crossed the alley, she “noticed that they were repairing the alley.”  Defense counsel asked the following questions:

“Q.  Okay, what did you notice?  What did you see exactly?

* * *

A.  As I approached it, I saw that there was -- it was dug rather deep.

Q.  And when you say dug, what was dug?

A.  The space that was dug out was dug deep, and there was a lot of rocks in there and a lot of mud, a [m]ixture of rocks and mud.

Q.  Was this visible to you when you were four-to-five squares away?

A.  No.  When I got close to it, I saw it better.”

Plaintiff explained that the entire area of the alley between the two sections of sidewalk was dug up.  She agreed that the dug-up area was about seven square feet in size, and that while the depth of the digging varied, with the area “higher toward the end and lower in the middle,” the digging was about six inches deep.  When asked whether she could see “this” as she approached the alley, plaintiff replied, “I saw it when I reached there, yes.”

Plaintiff stated that she started to walk over the dug-up sidewalk.  As she put one foot down, “all of a sudden [she] was sailing across the whole length of the dug up space.”  She explained that she took “one big step” before she fell, and she stated that a rock caused her to fall to the ground.  Defense counsel asked plaintiff whether she was able to see the rocks before she started walking on them.  Plaintiff replied, “I noticed the inside, there were a lot of rocks and debris inside.  It was like caked mud.  But I -- when I fell, I turned around and looked, that’s when I saw the rocks.”  Later in the deposition, she reiterated, “I turned around and I looked -- I turned and looked to see what made me fall, that’s when I saw the rock in the center and the one on each side, and the one in the center.”  In response to the question whether anything obstructed her view of these rocks as she started to walk in the dug up area, plaintiff stated, “There were sections inside of the dug out hole that were rough, and there were rocks in there.”  Plaintiff further testified that on the morning she fell, there were no barricades or warning signs around the dug-up area and no boards placed over it for pedestrians to walk on.

Defense counsel asked plaintiff whether anything prevented her from walking on the sidewalk on the west side of North Oakley, instead of the dug-up east side.  Plaintiff answered, “You have to be extremely careful when you walk there.  You have the alley coming this way and you have alley coming this way.  The alley that comes this way, they come tearing out of there like crazy.  The alley that goes this way, they come at a slow pace.”  Plaintiff also viewed photographs of the sidewalk.  She stated that the photos did not accurately depict the way the area looked at the time she fell because the sidewalk had been paved.

Plaintiff testified that as a result of her fall, she suffered a cut to her big toe and two broken bones in her left wrist.  Finally, plaintiff testified that she has been blind in her left eye for 38 years.  In addition, she has a cataract and an astigmatism in her right eye.  She only wears glasses for reading and was not wearing them when she fell.  

The City filed a motion for summary judgment in which it argued that because the condition of the alley was open and obvious it owed plaintiff no duty and that pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3-104 (West 1998)), it was immune from liability for failure to provide warning devices.  Following a hearing, the trial court found that the defect in the sidewalk was open and obvious and granted the City’s motion.  This appeal followed.

ANALYSIS

Summary judgment is proper where the pleadings, depositions, affidavits, and admissions on file, when viewed in the light most favorable to the nonmoving party, demonstrate that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2-1005©) (West 2000); 
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 30-31 (1999).  A plaintiff need not prove her case during a summary judgment proceeding, but must present some evidence to support each element of the cause of action.  
Ross v. Dae Julie, Inc.
, 341 Ill. App. 3d 1065, 1069 (2003).  We review grants of summary judgment 
de novo
.  
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001).  A grant of summary judgment may be affirmed on any ground supported by the record, even if that ground was not relied on by the trial court.  
Valenti v. Mitsubishi Motor Sales of America, Inc.
, 332 Ill. App. 3d 969, 971 (2002), citing 
Leonardi v. Loyola University
, 168 Ill. 2d 83, 97 (1995).

To state a cause of action for negligence, a plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, and that an injury was proximately caused by the breach.  
Bajwa v. Metropolitan Life Insurance Co.
, 208 Ill. 2d 414, 421 (2004).  On appeal, plaintiff contends that the trial court erred in finding that she failed to establish the existence of a duty.  She argues that, due to her visual handicap, the defect in the sidewalk was not open and obvious and that, due to the general condition of the sidewalk, she did not see the specific rock upon which she tripped until after she fell.  She further argues that the City should have anticipated that visually disabled people might not notice the condition, appreciate the risk, and avoid the area.  Whether a duty exists is a question of law.  
Bajwa 
, 208 Ill. 2d at 422. 

Ordinarily, parties who own, occupy, control, or maintain land are not required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious.  
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 447-48 (1996).  The term “ ‘[o]bvious’ denotes that ‘both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.’ ”  
Deibert v. Bauer Brothers Construction Co.
, 141 Ill. 2d 430, 435 (1990), quoting Restatement (Second) of Torts §343A, Comment 
b
, at 219 (1965).  Whether a condition is open and obvious depends on the objective knowledge of a reasonable person, not the plaintiff’s subjective knowledge.  
Bonner v. City of Chicago
, 334 Ill. App. 3d 481, 484 (2002). 

 Courts in other jurisdictions have applied this objective standard even where the plaintiff is visually impaired.  See, 
e.g.
, 
Lauff v. Wal-Mart Stores, Inc
., No. 1:01-CV-777 (W.D. Mich. October 2, 2002) (granting defendant’s motion for summary judgment where legally blind plaintiff was unable to see “gook” on restroom floor but condition would have been open and obvious to an ordinarily prudent person)
; 
Sidorowicz v. Chicken Shack, Inc
., 469 Mich. 912, 673 N.W.2d 106 (2003) (holding, in case involving blind plaintiff, that the determination of whether a particular open and obvious condition is nonetheless unreasonably dangerous is made using an objective, not subjective, standard)
; 
Lugo v. Ameritech Corp
., 464 Mich. 512, 518 n.2, 629 N.W.2d 384, 387 n.2 (2001) (holding that whether a plaintiff has “a particular susceptibility to injury” is “immaterial to whether an open and obvious danger is nevertheless unreasonably dangerous”)
.  But see 
Coker v. McDonald’s Corp
., 537 A.2d 549, 551 (Del. Super. Ct. 1987) (holding that “what is an open and obvious condition to a blind person depends upon what, if any, tools or aids the blind person utilizes to discover the condition, and the degree to which such aids are used”).

Relying on 
Borus v. Yellow Cab Co.
, 52 Ill. App. 3d 194 (1977), plaintiff asserts that the City is required to prove that the condition was open and obvious “not to just anyone, but to a reasonable person with similar handicaps or limitations as the plaintiff.”  Plaintiff has misinterpreted 
Borus
.  A careful reading of the opinion reveals that it addressed the issue of contributory negligence, not duty or the “open and obvious” doctrine.  Specifically, 
Borus
 held that if a plaintiff is ill or otherwise physically disabled, the standard of conduct to which that plaintiff must conform to avoid being contributorily negligent is that of a reasonable person under like disability.  
Borus
, 52 Ill. App. 3d at 201, citing Restatement (Second) of Torts §283C, at 18 (1965)
.  
Borus
 did not address the “open and obvious” rule as it relates to a defendant’s duty.  Accordingly, it is not particularly instructive in the context of the issues raised by the instant case.

We note that section 283C of the Restatement (Second) of Torts, cited in 
Borus
 and titled “Physical Disability,” provides as follows:

“If the actor is ill or otherwise physically disabled, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like disability.”  Restatement (Second) of Torts §283C, at 18 (1965)
.  

Plaintiff, relying on
 Borus
 and section 283C of the Restatement (Second) of Torts, argues that the standard of conduct to which she “must conform to avoid being negligent is that of a reasonable person under like disability.”  See 
Borus,
 52 Ill. App. 3d at 201.  Even applying that standard in the instant case, the record fails to support plaintiff’s argument that summary judgment was improper.

Comment 
c
 to section 283C explains that a disabled person may be required, under particular circumstances, to take more precautions than a person who is not disabled.  Restatement (Second) of Torts § 283C, Comment 
c
, at 18 (1965)
.  An accompanying illustration provides as follows:

“A, a blind man, is walking down a sidewalk in which he knows that there is a dangerous depression.  Without asking for assistance from anyone, A attempts to walk through the depression.  A may be found to be negligent, although a normal person would not be negligent in doing so.”  Restatement (Second) of Torts § 283C, Comment 
c
, Illustration 2, at 19 (1965).
 

The Court of Claims of Illinois has similarly noted, in the only Illinois case other than 
Borus
 to cite section 283C, that a disability does not relieve a plaintiff of the duty to exercise ordinary care for her own safety.  See 
Sewell v. Board of Trustees of Southern Illinois University
, 32 Ill. Ct. Cl. 430 (1979).  In 
Sewell
, the Court of Claims held, “A disabled or handicapped person, whether blind, deaf, aged or lame, will be held to exercise that degree of care which an ordinary prudent person with the same condition would have exercised under similar circumstances.”  
Sewell
, 32 Ill. Ct. Cl. at 430.

At her deposition, plaintiff testified that when she was about four or five sidewalk squares away from the alley, she noticed it was under construction.  As she approached the area, she saw that it was “dug rather deep.”  When plaintiff “got close to it,” she observed that “there was a lot of rocks in there and a lot of mud, a [m]ixture of rocks and mud.”  Plaintiff was able to perceive all of this despite the fact that she is blind in one eye and has a cataract and an astigmatism in the other.  Given plaintiff’s testimony, we find that both the condition of the sidewalk and the risk of walking on it were apparent to and would have been recognized by a reasonable person or by a reasonable person under like disability exercising ordinary perception, intelligence, and judgment.  Plaintiff’s visual impairment notwithstanding, the condition of the sidewalk was open and obvious.

Plaintiff’s testimony demonstrates that she was aware at the time of her fall that the sidewalk she chose to use was in a dangerous condition and that her view was not obstructed even though she was visually impaired.  Plaintiff observed the condition of the sidewalk as she approached it and was aware of it before she fell, yet she chose to walk through the construction. Moreover, she could have avoided the construction entirely simply by crossing to the sidewalk on the other side of the street.  She admitted at the hearing on the motion for summary judgment that she could have walked on the sidewalk on the other side of the street.

We do not disagree with plaintiff’s argument that the City should be considered to know that handicapped persons, including pedestrians with visual impairments, could encounter a construction zone.  See
 Hodges v. Jewel Cos
., 72 Ill. App. 3d 263, 265 (1979) (office building owner who solicited business of the public in general “must be taken to have contemplated the entrance of handicapped persons through its doorway, as well as those physically fit”).  However, the open and obvious nature of the condition of the sidewalk in the instant case, together with plaintiff’s own knowledge of that condition based on her testimony, undermines plaintiff’s argument that the City owed her a duty.

Finding the existence of an open and obvious condition does not end our inquiry.  There are two exceptions to the open and obvious rule: the distraction exception and the deliberate encounter exception.  
Sollami v. Eaton
, 201 Ill. 2d 1, 15 (2002).  We discuss these exceptions in turn.

Even where a condition is open and obvious, a property owner will be found to owe a duty of care if it is reasonably foreseeable that the plaintiff’s attention might be distracted so that she would not discover the obvious condition.  
Bonner
, 334 Ill. App. 3d at 484, citing 
Ward v. K mart Corp.
, 136 Ill. 2d 132, 149-50 (1990).  “The proper inquiry is ‘whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles.’ ”  
Bonner
, 334 Ill. App. 3d at 484-85, quoting 
Ward
, 136 Ill. 2d at 152.

In her brief, plaintiff asserts that she was “looking at areas of the alley sidewalk filled with mud, rocks and dug out areas, but she did not see the specific rock that caused her to fall until afterwards.”  We disagree that this circumstance qualifies under the “distraction” exception to the open and obvious rule.  A duty has been imposed pursuant to the distraction exception in cases where a student was distracted from a hole in a parking lot because he was focused on carrying a football helmet to a player who needed it (
Rexroad v. City of Springfield
, 207 Ill. 2d 33, 46 (2003)); where a painter was distracted from power lines because he had to watch where he placed his feet on a billboard walk-rail (
American National Bank & Trust Co. of Chicago v. National Advertising Co.
, 149 Ill. 2d 14, 29 (1992)); where an electrician was distracted from a tire rut when he looked up to see whether construction materials were being thrown off a balcony (
Deibert
, 141 Ill. 2d at 438); where a customer was distracted from seeing a concrete post outside a store because he was carrying a large item (
Ward
, 136 Ill. 2d at 154); where a customer was distracted from a ridge in a parking lot’s pavement when she grabbed the handle of a rolling, unattended shopping cart (
Green v. Jewel Food Stores
, Inc., 343 Ill. App. 3d 830, 835 (2003)); where a trucker was distracted from a lowered dockplate because he was unloading his truck (
Courtney v. Allied Filter Engineering, Inc.
, 181 Ill. App. 3d 222, 228 (1989)); and where a construction worker was distracted from seeing an uncovered hole because he was looking upward and toward the person helping him carry a large truss (
Shaffer v. Mays
, 140 Ill. App. 3d 779, 782 (1986)).

In each of the above cases, the plaintiff was distracted by something external to the dangerous condition.  Here, plaintiff is claiming that she was distracted from a specific aspect of the sidewalk by the general condition of the sidewalk.  We decline to extend the distraction exception to such a situation.

Under the “deliberate encounter” exception to the open and obvious rule, a duty is imposed when a possessor of land “has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.”  Restatement (Second) of Torts § 343A, Comment 
f
, at 220 (1965).  Liability under this exception stems from the landowner’s knowledge of the premises and what the landowner had reason to expect the invitee would do in the face of the dangerous condition.  
LaFever v. Kemlite Co.
, 185 Ill. 2d 380, 392 (1998); 
Preze v. Borden Chemical, Inc.
, 336 Ill. App. 3d 52, 58 (2002).  The exception has most often been applied in cases involving some economic compulsion, as where workers are compelled to encounter dangerous conditions as part of their employment obligations.  
Sollami
, 201 Ill. 2d at 16.

In the instant case, plaintiff argues that it was reasonably foreseeable that she would enter the construction area because of the “specific dangers” of walking on the sidewalk on the other side of the street.  At her deposition, plaintiff testified that she did not use the sidewalk on the west side of the street because “You have to be extremely careful when you walk there.  You have the alley coming this way and you have alley coming this way.  The alley that comes this way, they come tearing out of there like crazy.  The alley that goes this way, they come at a slow pace.”  While this testimony reveals plaintiff’s preference for walking on the east side of North Oakley, it does not demonstrate that she was compelled to do so.  We find the City had no reason to expect that plaintiff would proceed to encounter the open and obvious danger of the dug-up sidewalk on the east side of North Oakley because the advantages of doing so would outweigh the apparent risk.  Instead, we agree with the City that it was reasonable to expect that pedestrians who encountered this section of sidewalk would use readily available alternate routes, such as the sidewalk on the west side of the street.  The deliberate encounter exception to the open and obvious rule does not apply in this case.

Finding that the open and obvious rule applies does not end our analysis regarding duty.  When determining whether a duty exists, a court considers the following factors: (1) the reasonable foreseeability of injury; (2) the reasonable likelihood of injury; (3) the magnitude of the burden that guarding against injury places on the defendant; and (4) the consequences of placing that burden on the defendant.  
Sollami
, 201 Ill. 2d at 17.

First, as noted above, a duty to warn of open and obvious conditions will not be imposed unless the distraction exception or the deliberate encounter exception applies.  
Sollami
, 201 Ill. 2d at 17.  We have already discussed these exceptions and find that neither applies in this case.

Second, with respect to the reasonable likelihood of injury, “the law generally considers the likelihood of injury slight when the condition in issue is open and obvious, because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks.”  
Sollami
, 201 Ill. 2d at 17, citing 
Bucheleres
, 171 Ill. 2d at 456.  Here, the condition of the sidewalk was open and obvious.  Therefore, the likelihood of injury factor carries little weight.  See 
Sollami
, 201 Ill. 2d at 17.

Finally, as to the magnitude of the burden of imposing a duty and the consequences of such a burden, plaintiff suggests that the City should place warnings or barricades around areas of sidewalk under construction.  Specifically, plaintiff argues that a section of the Chicago Municipal Code requires the City to erect a fence or railing around construction areas on public ways, that the existence of this ordinance “demonstrates that it is not unduly burdensome to impose a legal duty since the City both adopted such an ordinance and included its own employees within its ambit and purview,” and that the ordinance demonstrates an easy and non-burdensome manner of satisfying its duty.  See Chicago Municipal Code §10-20-605 (1997).

Under section 3-104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), a local public entity is not liable for an injury caused by its failure to initially provide traffic warning signs or restraining devices or barriers.  745 ILCS 10/3-104 (West 2000); 
Bonner
, 334 Ill. App. 3d at 487.  In 
Bonner
, the plaintiff tripped over a light pole base that contained four bolts protruding about three inches from the sidewalk. 
 Bonner
, 334 Ill. App. 3d at 483.  The court in 
Bonner
 noted that section 3-104 acts to immunize a municipality against liability arising from its failure to initially provide a traffic control device, even where such failure might endanger safety.  
Bonner
, 334 Ill. App. 3d at 487, citing 
Ramirez v. Village of River Grove
, 266 Ill. App. 3d 930, 932 (1994).  The 
Bonner
 court further noted that under section 1-207 of the Illinois Vehicle Code, the term “traffic” includes pedestrians.  
Bonner
, 334 Ill. App. 3d at 487, citing 625 ILCS 5/1-207 (West 2000)
.  The court in
 Bonner
 concluded: 

“Because the term ‘traffic’ includes pedestrians under section 1-207 of the Illinois Vehicle Code (625 ILCS 5/1-207(West 2000)), the City is not liable for plaintiff’s injuries for failure to install rubber cones or wooden horses at the light pole base, irrespective of the ease or burden of doing so.  As a matter of public policy, the decision to install signals requires a city traffic planner to balance competing interests and make a judgment call as to which solution would best serve the interests of safety, convenience and cost.  [Citation.]  Therefore, the City had neither a duty nor liability when it did not initially install warning devices at the scene of plaintiff’s injuries.”  
Bonner
, 334 Ill. App. 3d at 487.

Similar to 
Bonner
, we find section 3-104 of the Tort Immunity Act immunizes a municipality against liability arising from its failure to provide barricades or warning signs to pedestrians.  745 ILCS 10/3-104 (West 2000).  As previously noted, under section 1-207 of the Illinois Vehicle Code, the term “traffic” includes pedestrians.  625 ILCS 5/1-207 (West 2000). Therefore, in the context of this case, the City cannot be liable for failing to erect warnings or barricades around the area of sidewalk under construction.  See 
Bonner
, 334 Ill. App. 3d at 487.

We note that a plaintiff can sue for damages based on violation of a statute or ordinance only when the legislation is construed to create an implied private right of action.  See
 Fisher v. Lexington Health Care, Inc.
, 188 Ill. 2d 455, 459-60 (1999);
 Abbasi v. Paraskevoulakos,
 187 Ill. 2d 386, 402-03 (1999) (Harrison, J., dissenting).  Plaintiff did not allege that section 10-20-605 of the Chicago Municipal Code created an express or implied private right of action and did not seek damages under that section.  Chicago Municipal Code §10-20-605 (1997).
  Moreover, plaintiff could not successfully sue for violation of the ordinance because, for the reasons previously noted, her claim of breach by the City of a duty to barricade the construction area of the sidewalk is undermined by section 3-104 of the Tort Immunity Act.  Section 3-104 
immunizes the City from failure to provide traffic control device barriers, and “traffic” includes pedestrians.  745 ILCS 10/3-104 (West 2000); See 625 ILCS 5/1-207 (West 2000).  As the court held in
 Bonner
, this includes failure to barricade hazards on the sidewalk, since such barricades are considered traffic control devices.  See 
Bonner
, 334 Ill. App. 3d at 487.

In her reply brief plaintiff relies on
 Ide v. City of Evanston,
 267 Ill. App. 3d 881 (1994), in support of her argument that the City should have provided barricades.  In
 Ide
 the court recognized that an unnatural accumulation of ice on the sidewalk was an open and obvious hazard, but held that the City of Evanston had a duty because it had notice of the hazard and could readily have erected a barricade.  
Ide,
 267 Ill. App. 3d at 886. 
 Ide
 did not consider immunity under section 3-104 of the Tort Immunity Act.  The holding in
 Ide 
is further undercut by the more recent analysis and holding by the Illinois Supreme Court in
 Bucheleres
 that there is no duty to protect persons from open and obvious hazards or to warn of the danger posed by such hazards. 
 Bucheleres,
 171 Ill. 2d at 459; see also
 Sollami
, 201 Ill. 2d at 17.

In this case, the dangerous condition of the sidewalk was open and obvious.  The law does not impose a duty to warn of open and obvious conditions unless the distraction exception or the deliberate encounter exception is found.  Here, neither exception applies.  The likelihood of injury was slight because it is assumed that persons encountering potentially open and obvious conditions will appreciate and avoid the risks.  Finally, the City is immune from liability arising from its failure to initially provide warnings or barricades in the area where plaintiff was injured. 745 ILCS 10/3-104 (West 2000); 625 ILCS 5/1-207 (West 2000).   Given these circumstances, we find that plaintiff has failed to establish the duty element of her negligence claim.  Accordingly, summary judgment was proper.

CONCLUSION

For the reasons explained above, we affirm the judgment of the circuit court.

Affirmed.

TULLY and GALLAGHER, JJ., concur.